ESTELLAH C. WAGNER *vs.* THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK ET ALS.

Third Judicial District, New Haven, June Term, 1914.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

Contracts between husband and wife made in good faith and upon valuable consideration, and which are just, reasonable and certain in their terms, are enforceable in equity.

Although a husband who was married in 1873 and has not accepted the terms of the Act of 1877, is entitled to the possession and income of his wife's personal property, he may nevertheless abandon or

relinquish this right, in which case the law will treat the property as her sole and separate estate, which she may loan to her husband or deal with as she pleases, precisely like any other owner; and if loaned to her husband she may take from him assignments of policies of insurance upon his life as security for the repayment of the loans, pursuant to their agreement before the loans were made.

In the present case, which was an action of interpleader to determine the rights of the parties to the amount due upon one of the life insurance policies, the administrator of the husband's estate claimed that the assignments by the husband were in fraud of his creditors. *Held* that the finding of facts specifically negatived this claim and alleged ground of error.

The personal disabilities attendant upon women married prior to 1877 prevented a wife from making a valid and enforceable contract to guarantee an indebtedness of her husband.

The owner of $2,000, which was in the hands of her attorney who had collected it, agreed to and did loan it to the attorney's wife, and the latter loaned it to her husband. All parties intended, by this transaction, to cancel the debt of the attorney to his client and to substitute the attorney's wife as such debtor in his place. *Held* that the mere fact that the money remained in the physical possession of the attorney, did not, as matter of law, deprive the transaction of the effect intended by the parties.

The statute of limitations runs against loans made by a wife to her husband, from her sole and separate estate, as it would have run had the transaction been between strangers.

Advantage may be taken of the statute of limitations, although not pleaded, where no ground or reason for such a plea is disclosed until the trial; and the claim, if then made and overruled, is available on appeal.

The giving of security for a debt barred by the statute of limitations, waives the benefit of the statute and operates as an unequivocal acknowledgment of the existence of the debt, from which the law implies a promise to pay it.

In the present case oral evidence of the consideration for the assignments was admitted. *Held* that such evidence was competent, and that the trial court properly viewed the assignments as a recognition upon the part of the husband of his then existing liability for the several loans, and as a promise to pay them by providing the means therefor, in reliance upon which all the loans, except the first, had been made.

When the several loans made by the wife had amounted, without interest, to $7,000 or more, the husband gave her two promissory notes, payable on demand, one for $2,000 and later one for $1,000. In so doing he intended to acknowledge his indebtedness to her, to renew his promise to pay the loans, and to prevent them from out-

lawing. *Held* that the giving of these notes constituted unequivocal acknowledgments of the entire debt from which the law would imply a promise to pay.

A secured creditor of an insolvent estate who fails to notify the commissioners of the fact that he holds security for his claim presented to them for allowance, as required by General Statutes, § 337, does not thereby elect to proceed against the estate and to waive his claim to the security. He will, however, be required to apply the security to his debt in the first instance, and then be entitled to a dividend from the estate "only upon the excess of his claim above the value of said security," as provided by the statute.

In the absence of a contrary statutory procedure, one who holds security for his debt may pursue all his remedies at the same time, but he will not in any case be permitted to obtain more than his debt. If a dividend be paid him, the security becomes available for the balance of the debt only; if the security be first applied, the dividend will be allowed only upon the remaining part of the debt; and if part payments are made by each method, their sum total will not be allowed to exceed the debt.

Argued June 9th—decided October 8th, 1914.

SUIT in the nature of interpleader to determine the rights of the respective claimants in and to a sum of money paid into court by the Mutual Life Insurance Company as the amount due from it under a policy upon the life of the plaintiff's deceased husband, brought to and tried by the Superior Court in New Haven County, *Gager, J.;* facts found and judgment rendered for the plaintiff for $9,028, and appeal by the People's Bank and Trust Company, one of the defendants, who claimed the money in its capacity of administrator *d. b. n. c. t. a.* upon the estate of the insured decedent. *No error.*

S. Harrison Wagner and the plaintiff, Estellah C. Wagner, intermarried in 1873, and did not thereafter avail themselves of the Married Women's Act of 1877. Mr. Wagner died June 17th, 1912, leaving a will in which Mrs. Wagner was named as executrix. She qualified as such July 11th, 1912, and continued as executrix until July 1st, 1913, when she resigned, and

the People's Bank and Trust Company was appointed in her stead as administrator *d. b. n. c. t. a.*

From 1900 to his death in 1912, Mr. Wagner had a policy of insurance on his life in the Equitable Life Assurance Society and one in the Mutual Life Insurance Company.

In January, 1900, Mrs. Wagner received, by distribution from her father's estate, one third of a $1,500 debt owed by Mr. Wagner; the other two thirds were inherited by her brothers, who gave the same to her. Mr. Wagner did not pay over this sum to Mrs. Wagner, but they agreed that Mr. Wagner should hold it as a loan from her, which he promised to repay with interest. About March 1st, 1901, Mr. Wagner collected $1,200 due Mrs. Wagner for a tort injury to her person, and thereafter Mr. Wagner borrowed this sum of Mrs. Wagner, upon his promise to repay the same with interest. It did not appear that he ever paid over this sum, so collected, to his wife, but he always held and treated and acknowledged it to be her sole and separate estate. Prior to December 1st, 1904, there was delivered to Mrs. Wagner stock to the amount of $2,500 as a gift to her. This was sold and reinvested by her. These investments were in part sold, and the proceeds, $1,600, loaned by Mrs. Wagner to her husband, upon his promise to repay the same with interest. Mr. and Mrs. Wagner and the donor recognized that this gift became her sole and separate estate. Mr. Wagner collected for a Mrs. Tousley $2,000, and Mrs. Tousley agreed to loan and did loan this sum to Mrs. Wagner October 1st, 1905, and Mrs. Wagner in turn loaned it to Mr. Wagner. This sum was not in fact paid over to either Mrs. Tousley or to Mrs. Wagner, but all the parties intended this as a loan from Mrs. Tousley to Mrs. Wagner, and then from Mrs. Wagner to Mr. Wagner, and a cancellation of the debt of Mr. Wagner

to Mrs. Tousley. Mrs. Wagner sold eleven shares of New Haven Water Company stock, inherited from her father, and from the proceeds loaned Mr. Wagner $1,000. Mrs. Wagner borrowed, upon stock inherited from her father, $450, and loaned the same to Mr. Wagner.

Mr. Wagner always recognized these several loans as debts owed by him to his wife. He always treated the moneys loaned him, and Mrs. Wagner's stocks and bonds, as her sole and separate estate. He never took or claimed the income from her investments; she collected the income and had entire control of them.

Shortly after the first loan, Mr. Wagner agreed with Mrs. Wagner to assign to her $25,000 of insurance upon his life, to secure the payment of that loan and those that might thereafter be made with interest; and Mrs. Wagner made the loans subsequent to the first in reliance upon said agreement. Pursuant to said agreement, Mr. Wagner assigned to Mrs. Wagner in January, 1912, the Equitable policy, the proceeds of which she collected and credited upon her claim; and on March 29th, 1912, the Mutual Life policy, the proceeds of which form the subject of this action. These assignments were made in acknowledgment of these loans and in recognition of them as an existing claim, and to carry into effect his said promises to secure the loans with interest. Thereafter, in May and June, 1912, Mrs. Wagner paid premiums due on said policies, amounting to $258.41. The consideration for the assignments were these loans, with interest to December 9th, 1913, aggregating $11,900. Mr. and Mrs. Wagner believed at this time Mr. Wagner was solvent, and did not make the assignments in fraud of his creditors nor in view of his insolvency.

On March 15th, 1910, Mr. Wagner gave to Mrs. Wagner his demand note for $2,000, and on March 15th,

1912, his demand note for $1,000. These notes were not given in discharge of the entire debt, but for the purpose of acknowledging the debt to her and of renewing his promise to pay the several loans and to prevent their outlawing.

Mrs. Wagner, as executrix, under advice of counsel, represented her husband's estate as insolvent, but did not know at the time that it was in fact insolvent. The estate consists of many securities of uncertain value, and it cannot be now found that the estate is in fact insolvent, although it is highly probable that Mr. Wagner was in fact insolvent on March 29th, 1912, the date of the assignment of the Mutual Life policy.

*Harrison Hewitt,* for the appellant (defendant People's Bank and Trust Company, administrator).

*George M. Wallace* and *George E. Beers,* for the appellee (plaintiff).

WHEELER, J. The reasons of appeal based upon the exceptions to the finding are not in due form. Practice Book, 1908, p. 268, § 9. The record satisfies us that neither of the several exceptions—if made in accordance with our prescribed method—would have furnished valid ground of appeal.

The first and second reasons of appeal raise the point that all of these contracts of loan and the assignment were invalid, since Mr. and Mrs. Wagner were married prior to 1877. The third reason of appeal is that Mr. Wagner's agreement to pay Mrs. Wagner interest on her loans was without consideration, since he was entitled to the income of her personal property. The seventh reason of appeal is that Mr. Wagner had not abandoned his marital rights as to the several items of property of Mrs. Wagner loaned to

him, so as to constitute them her sole and separate estate. The eighth and ninth reasons of appeal are intended to be identical with the seventh, with special application to the loan of moneys received from Mrs. Wagner's father's estate, and to the loan of the moneys received by Mr. Wagner for the tort injury to Mrs. Wagner.

The several loans and the conveyance assigning the policy of insurance were made in good faith, upon a valuable consideration, and must, in this equitable action, be enforced, since the terms of the contracts are just, reasonable and certain. *Boland* v. *O'Neil*, 72 Conn. 217, 44 Atl. 15; *Brown* v. *Clark*, 80 Conn. 419, 68 Atl. 1001; *Clarke* v. *Black*, 78 Conn. 467, 62 Atl. 757; *Corr's Appeal*, 62 Conn. 403, 26 Atl. 478; *Haussman* v. *Burnham*, 59 Conn. 117, 22 Atl. 1065.

Under the statute of 1849,—applicable to Mr. and Mrs. Wagner,—he was entitled to the possession of all of her personal property and the income therefrom, which was not held as her sole and separate estate. Personal property held as her sole and separate estate was hers to do with as she pleased; she might loan it to her husband and make any contract in relation to it that a stranger could make with his property. *Comstock's Appeal*, 55 Conn. 214, 220–222, 10 Atl. 559; *Imlay* v. *Huntington*, 20 Conn. 146.

From the finding it appears that Mrs. Wagner always retained the possession and control of, and collected the income from, her personal property free from the domination and supervision of her husband; and that as to the proceeds of the securities sold and loaned him, and all other loans made, he agreed to repay the same with interest. It is also found that Mr. Wagner always treated the moneys loaned him by Mrs. Wagner, and all of her securities, as her sole and separate estate. The finding makes this property her sole and separate estate.

It also appears from the finding that shortly after the first loan Mr. Wagner agreed to assign to Mrs. Wagner $25,000 of life insurance, to secure to her the payment of the loan made and others which might be made, with interest; and the loans subsequently made were in reliance upon such agreement, and the assignments of policies thereafter made were in fulfillment of this agreement. These acts completely divested the husband of all marital control of these items of her property, and if they were not already the sole and separate property of the wife made them such. *Bidwell* v. *Beckwith*, 86 Conn. 462, 469, 85 Atl. 682.

The finding specifically negatives reasons of appeal three and five, that these loans and the assignment were in fraud of creditors and void as to them.

The sixth reason of appeal is that Mrs. Wagner was a mere guarantor of a loan by Mrs. Tousley to Mr. Wagner. If Mrs. Wagner was a mere guarantor, the sum so guaranteed could not be included in the consideration for the assignments, for the reason that the contract of guaranty would be unenforceable, since Mr. and Mrs. Wagner were married prior to April 20th, 1877. *Freeman's Appeal*, 68 Conn. 533, 539, 37 Atl. 420; *National Bank of New England* v. *Smith*, 43 Conn. 327. The finding, however, negatives the claim that the transaction was one of guaranty. It recites that Mr. Wagner had in his possession $2,000 collected by him and belonging to Mrs. Tousley, and that Mrs. Tousley agreed to loan, and did loan, this sum to Mrs. Wagner, and she in turn loaned it to Mr. Wagner. The $2,000 was not in fact paid over to Mrs. Tousley, or by her paid over to Mrs. Wagner, or by Mrs. Wagner paid over to Mr. Wagner. All the parties intended this as a loan to Mrs. Wagner and an absolute cancellation of the debt of Mr. Wagner to Mrs. Tousley. We think the finding is controlling,

and it follows, as a necessary conclusion from the subordinate facts found, that Mrs. Wagner loaned Mr. Wagner the $2,000, and was not a mere guarantor of his debt. Nor do we think the fact that this sum remained in the physical possession of Mr. Wagner deprives the transaction, as matter of law, of the effect intended by the parties.

Reason of appeal ten, and a part of nine, are that all claims accruing prior to July 1st, 1906, are within the statute of limitations, and that the assignment of the policy of insurance did not constitute a new promise under General Statutes, § 707, taking the claims out of the statute. The statute was not pleaded, and could not have been, since the several items making up the consideration for the assignment of the policy were not disclosed until the trial. This claim was made in argument in the trial below, and hence is available on appeal. Since Mrs. Wagner loaned these several sums from her sole and separate estate, the statute runs against her, as in the case of a transaction between strangers. This is an equitable action of interpleader, to determine the ownership of the proceeds of an insurance policy which the court finds was assigned as security for the payment of certain debts owed the plaintiff by the assured. At the time of the assignment, unless there had previously been a new promise to pay, these debts were barred. Though the debts were then barred, that defense could not be made subsequent to the assignment of the policy to secure their payment. The giving of security for a debt barred by the statute of limitations, waives the benefit of the statute and operates as an unequivocal acknowledgment of the existence of the debt, from which the law implies a promise to pay the debt. It is an acknowledgment of liability as significant as a part payment of the debt; both acts are alike in character, and equally une-

quivocal. *Merrills* v. *Swift*, 18 Conn. 257, 268; *Smith* v. *Ryan*, 66 N. Y. 352, 354; *Connecticut Mut. Life Ins. Co.* v. *Dunscomb*, 108 Tenn. 724, 729, 69 S. W. 345; *Pollock* v. *Smith*, 107 Ky. 509, 54 S. W. 740; *Conway* v. *Caswell*, 121 Ga. 254, 48 S. E. 956; *Balch* v. *Onion*, 58 Mass. (4 Cush.) 559; *Begue* v. *St. Marc*, 47 La. Ann. 1151, 17 So. 700; 25 Cyc. 1343.

The trial court properly viewed the transaction of the assignment in the light of the facts and circumstances under which it was made. The consideration for the assignment was open to oral proof. It very plainly involved, as the court has found, a recognition of these several loans as present obligations, and constituted an agreement that the policy of insurance should stand as security for their payment, with interest, in accordance with the original agreement, in reliance upon which all but the first of these loans had been made. The assignment was a promise to pay these loans by providing the means for so doing. The giving of the notes were also unequivocal acknowledgments of the entire debt, from which the law would imply a promise to pay the loans.

Reason of appeal eleven is that the presentation by Mrs. Wagner of her claim to the commissioners on the insolvent estate of Mr. Wagner, and its allowance, without notice to them of the security held by her for her claim, was an election by her to receive her claim in that way rather than from the security of this policy assigned to her.

The procedure for a creditor of an insolvent estate who has security for his claim, is that prescribed by General Statutes, § 337. It is his duty upon presenting his claim to the commissioners to notify them of his security, and their duty to allow or disallow the claim, and to find the value of the security and report the same to the Court of Probate; and if they allow such

claim, it becomes the duty of the executor, administrator, or trustee, to notify the creditor of the claim allowed and the value of the security found; and, unless within fifteen days after such notice he relinquishes such security, he shall be entitled only to a dividend upon the excess of his claim above the value of his security. The statute does not in terms prescribe the procedure in case he fails to notify the commissioners of his security and fails to make the election prescribed. It does not provide that the presentation of his claim is a waiver of his security. In the absence of a contrary statutory procedure, one who holds security for his debt may pursue his remedy on the debt and on the security at the same time. He will not be permitted, in any case, to obtain more than his debt. If a dividend be paid him, the payment is applied on the debt, and the security is available only for the balance of the debt. If the dividend satisfy the debt, the security is discharged. If the security be first applied to the debt, the dividend will be allowed only upon the part of the debt unsatisfied. *Findlay* v. *Hosmer*, 2 Conn. 350, 353; *Peck* v. *Harrison*, 23 Conn. 118, 122; *Lawrence* v. *Security Co.*, 56 Conn. 423, 442, 15 Atl. 406. If payment be secured in part by each method, the total payments will not be permitted to exceed the debt.

Our statute has, to a certain extent, modified these rules. Since the statute made it the duty of Mrs. Wagner to give notice of her security, and, unless she relinquished her security, to apply it to her debt, and then to obtain a dividend from the estate upon the excess of her debt, she should not be permitted, through failure to comply with the statute, to secure a greater benefit than she could obtain by a compliance with the statute. So long as the statute stands, we think she must apply the security to her debt, in the first instance, and then obtain a dividend from the estate only upon

the excess of her debt. This remedy, we think, she was entitled to, even though she had given no notice to the commissioners of her security.

In this case the security was more than sufficient to pay her debt, and the judgment of the court properly provides for the cancellation of her claim, as allowed by the commissioners, upon the payment from the proceeds of the security, of the amount found due her by the court. The administrator upon Mr. Wagner's estate has no just cause of complaint with the terms of the decree.

The record does not show that the allowance by the commissioners of the plaintiff's claim was accepted as final by the trial court; hence we have no occasion to consider reason of appeal four. Moreover, as we understand the finding, it tends to show that the court found the amount of the claim, and did not accept the allowance of the commissioners as final.

There is no error.

In this opinion the other judges concurred.